**EASTERN MORTGAGE & SECURITIES CO. v. COLLINS et al.**

**No. 10604.**

Court of Civil Appeals of Texas. Galveston.

May 19, 1938.

Rehearing Denied June 23, 1938.

Raymond E. Buck, of Forth Worth, and T. E. Richards, Jr., of Houston, for appellant.

Elledge & Elledge, of Houston, for appellees.

CODY, Justice.

This is a usury suit. It arose out of a loan contract, consisting of a loan application and two notes secured by separate deeds of trust on the same real property in Groveton, Trinity County, Texas. The application was made by John R. Collins, since deceased, to the National Bond & Mortgage Corporation for a loan of $12,000. The notes were executed by Collins and his wife, and were dated September 19, 1927, and made payable to the order of the National Bond & Mortgage Corporation, and, together with their respective securing deeds of trust, were on that date delivered to the payee.

Note No. 1 was for $12,000 and bore interest from its date at the rate of 6% per annum, but called for no payment of principal during the first 36 months. Note 2 was for $2,400, and was payable in 36 equal monthly installments, without interest. Appellees contend that Note 2 was an interest note. If this is true, the loan was usurious. Appellees are successors in interest to the borrower, appellant is successor in interest to the National Bond & Mortgage Corporation. It should be added at this time that when the National Bond & Mortgage Corporation disbursed the proceeds of the loan it retained $600 thereof.

It is the contention of appellant that the National Bond & Mortgage Corporation was only a broker in this transaction, and that the money it loaned to the borrower was not its own money, and that the $600 it retained at the time it distributed the proceeds of the loan, and the payments required by the terms of Note 2 were for

expenses for which a broker had the right to contract to be paid, and that such payments did not constitute interest. This, appellant contends, appears from the application for the loan signed by the borrower. This application is too lengthy to be copied into the opinion, but excerpts copied from it are appended to this opinion as an appendix. From these, its similarity to the application for a loan which is discussed in Baltimore Trust Company et al. v. Sanders et ux., Tex.Civ.App., 105 S.W.2d 710, writ dismissed, is at once apparent. This similarity is accounted for by the fact that the application for loan in the Sanders Case was also made to the National Bond & Mortgage Corporation. And as in that case, so in the case at bar, the National Bond & Mortgage Corporation assigned Note 1, and the first lien securing its payment, to the Century Trust Company of Baltimore and Henry M. Laithe, as trustees under that certain assignment and deed of trust dated May 1, 1927. This was done October 14, 1927. Then on April 26, 1933, the Baltimore Trust Company (the Century Trust Company having merged with the Baltimore Trust Company) and Henry M. Laithe, Trustees, assigned such $12,000 note, and the lien securing it to Maryland Casualty Company. And on the same date the Maryland Casualty Company assigned such note and lien to appellant.

Now while it is true that the application, made by the borrower to the National Bond & Mortgage Corporation in this case, states that it is understood the money being lent to the borrower is not the money of the National Bond & Mortgage Corporation, this is but the statement of an opinion and of an opinion that is a mistaken one. This exact point was ruled on in Baltimore Trust Company v. Sanders, supra. It was there stated (page 714): "We do not have to go beyond the express terms of the application to demonstrate that the assertion therein that the bond company was not loaning its own money was not true. * * * In no proper sense can the transaction detailed in the application be classified as that of a brokerage contract whereby the bond company, acting as broker or agent of appellees, procured a loan for them from other parties as lenders to appellees."

Again the Court said, in the case just quoted from:

"Under this state of facts" (the plan provided for in the application of pledging the note of the borrower to enable the bond company to sell its bonds, etc.) "it is clear that the expenses, testified to by Viner as going to make up note 2, were expenses incurred by the bond company in the conduct of its own business; that is, for printing, negotiating, etc., its own bonds and guaranteeing the collateral securing them."

In the present case the same witness, Viner, gave like evidence of the "expenses" incurred in connection with the present loan.

As further stated by the court in the case just quoted from:

"This exact point was ruled in, National Bond & Mortgage Corporation v. Mahaney, 124 Tex. 544, 80 S.W.2d 947, 952, in the following language (adopted by the Supreme Court) of the late Judge Ryan: 'The plan devised by the plaintiff in error in the management of its business contemplated the issuance of bonds to obtain money for itself, secured by the first lien notes of various parties who had previously borrowed money from it. The money obtained from the sale of these bonds became the money of the plaintiff in error, and the expenses incident to the sale thereof were not expenses incident to the loan made by it to Allgood, but were expenses incurred in its own behalf in obtaining a loan for itself.'"

Consonant with the provisions of the application, Note 2 for $2,400, payable in monthly installments of $66.72, contained the following recital:

"This note represents a reimbursement to the payee hereof of certain expenses of the payee and as compensation to payee for services in connection with a loan of $12,000.00 to us as represented by a note of even date herewith from the makers hereof to the order of payee, numbered One, all as evidenced by the application of the makers hereof to the payee to obtain said loan. If the maturity of Note No. 1 shall be accelerated in whatever manner no part of this note shall be collectible except such part of $30.00 of each installment as shall have accrued to the date of such acceleration, as said compensation to the payee, and, in addition, such part of said installments as shall be sufficient, with any other payments, made to reimburse payee for its expenses as provided for in said application.

"If the payment of the principal of Note No. 1 shall be voluntarily anticipated by the makers thereof prior to its maturity date, the makers in consideration of the privilege of so anticipating it shall thereupon become bound to pay all the unpaid installments provided for in this note as a new and independent undertaking."

█ It follows from what has been said, that the money loaned in the present case was money belonging to the National Bond & Mortgage Corporation. Therefore the payments required to be made on Note 2, being payment of expenses which merely represented the overhead cost to such lender of conducting its money lending business according to the plan which it followed, were not notes for "expenses" legitimately chargeable against the borrower, but were interest. The loan was therefore usurious.

█ As stated earlier, the National Bond & Mortgage Corporation, when it disbursed the proceeds of this loan, retained in its own hands $600 thereof. According to the statement which it furnished the borrower at the time of such disbursement, this $600 was retained as a "commission" for making the loan. According to the recital in the application, this $600 was to be applied to the same "expenses" as the payments called for by Note 2. If it was retained by the lender as commission for lending its own money, it would constitute interest as a matter of law. Nevels v. Harris, Tex.Sup., 102 S.W.2d 1046, 1049, 109 A.L.R. 1464. If it was applied to the overhead cost of the lender's business, it would also be interest. The jury, evidently basing its finding on the recital in the application, and not being aware that when thus applied the payments were interest, found this $600 payment to be payment of expense, and not of interest. The loan, however, was usurious, even if this $600 payment was expense. The jury correctly found that the payments called for by Note 2 were interest. $14,732 has been paid on the loan, all of which is applicable to principal. But appellees cannot recover the payment that has been made in excess of the principal, which they have recognized by filing a remittitur.

We see no reason to extend this opinion further. Finding no reversible error, the judgment of the trial court, as reduced by the remittitur, is affirmed.

Affirmed.

PLEASANTS, C. J., absent.

Appendix.

"Application for Loan and Deposit Agreement National Bond & Mortgage Corporation, Houston, Texas.

"Gentlemen:

\* \* \* \* \* \* \*

"We understand you are not loaning your own money, but will obtain this loan for us by pledging our Note No. 1 as collateral under the terms of one of your assignments or deeds of trust under which you issue and sell your certificates or bonds secured by our note and other notes, which notes before being so pledged must be guaranteed by a bond of a casualty or surety company. We understand you incur certain expense in preparing, printing and selling your bonds or certificates, having our note guaranteed, as compensation to the trustee of your assignments or deeds of trust, handling the collections on our note and keeping records of same, and in keeping informed as to the payment of taxes and maintenance of insurance on our property. To reimburse you these expenses we authorize you to have deducted from the proceeds of our loan $600.00, and we agree that as monthly payments are made on our Note No. 2 you may retain $30.00 of each installment as compensation to you for service in negotiating, handling and supervising this loan for us during its continuance, and further there will be placed by you to our credit the sum of $36.72 out of each of said monthly installments which shall be designated on your books as Indemnity Fund. Out of this fund from month to month you are to pay any actual reasonable expenses of the kind specified above incurred by you in connection with this loan over and above said sum of $600.00. If, beginning with the 31st month, there shall exist any surplus in said fund, then there is to be credited to said fund interest on the monthly balance in said fund at the rate of 6% per annum. If said Indemnity Fund with accrued interest thereon at the first of any month after the 37th month exceeds your said expenses to such current month, you may apply a sufficient amount thereof monthly to pay you an additional commission for negotiating, handling, and supervising this loan during its continuance, equal to 2% interest on the unpaid balance of said Note No. 1, it being understood that said additional 2% is compensation to you for your said services and is not additional interest on said loan. If at the final payment of Note No. 1 there is any balance remaining in such Indemnity Fund you are to return the same to us with accrued interest. If the maturity of Note No. 1 is accelerated, we are to pay you sufficient of the unpaid installments, if any, of Note No. 2 to pay you your said compensation equal to $30.00 of each installment accrued to the date of such acceleration and in addition sufficient of the remainder of the unpaid installments to re-

imburse you for your said expenses to the date of such acceleration. We agree not to anticipate the payment of Note No. 1, but if we do, we agree in consideration of the privilege of anticipating it and of the services performed by you to that date to pay you all the installments of Note No. 2 and you may retain any balance of said Indemnity Fund. Since the loan to us is to run a considerable length of time and your employees keeping your records in connection with our said notes may change from time to time, we agree that in any suit of any nature in any court involving any or all of our said notes, your records in reference to any or all of said notes, your said expenses and the status of said Indemnity Fund may be introduced in evidence upon being identified by their custodian without further proof in connection with them, and they shall be conclusive evidence of the facts shown by them unless contradicted by other evidence.

\* \* \* \* \* \* \*

"As from the date of your acceptance hereof you will be in a position to complete this loan, we agree to pay interest on our Note No. 1 from its date. At the time this loan is completed you may deduct from the proceeds any installments on our notes then due and unpaid.

"You are to pay us the proceeds of this loan only when all the above provisions have been complied with, when the improvements to be constructed, if any, have been completed, and you have been satisfied that we have good title to the property and our notes are secured by liens of the kind specified above superior to all other liens (except current taxes not yet due) and that there are no debts in connection with the construction of the improvements that may be later secured by superior liens.

\* \* \* \* \* \* \*

"This application shall be binding upon you only when accepted in writing by one of your duly authorized officers, and when so accepted shall be binding upon and inure to the benefit of you and us, and your and our heirs, legal representatives, successors and assigns respectively; but neither you nor we can assign it without the written consent of the other. No one but a duly authorized executive officer of the National Bond & Mortgage Corporation has authority to alter in any manner any of the provisions of this application and no alteration shall be valid unless in writing signed by such officer and attached hereto."