David P. SLEDGE, Appellant,

v.

John L. MURPHY, Appellee.

No. 3312.

Court of Civil Appeals of Texas.

Waco.

Nov. 17, 1955.

Rehearing Denied Dec. 22, 1955.

Irion, Cain, Bergman & Cocke, Neil Brans, Dallas, for appellant.

Edward C. Fritz, Dallas, for appellee.

TIREY, Justice.

This action is one for damages growing out of the enforcement of several alleged usurious contracts executed between the same parties. The jury in its verdict found substantially (1, 2 and 3) that in March 1950 the defendant Sledge agreed to sell the plaintiff a 1941 Ford automobile for $295 and that the amount of money in excess of the $295 that plaintiff paid on the agreed purchase price to defendant on the purchase of said 1941 Ford automobile was the sum of $101.50, and that such sum was compensation to plaintiff in excess of ten per cent per annum for the use or detention of his money; (4, 5 and 6) that in March 1951 the defendant Sledge agreed to sell the plaintiff a 1947 Ford automobile for $795, and that the amount of money in excess of the $795 that plaintiff paid on the agreed purchase price to defendant on the purchase of said 1947 Ford automobile was the sum of $549.50, and that such sum was compensation to plaintiff in excess of ten per cent per annum for the use or detention of his money; (7, 8 and 9) that in September 1951 the defendant Sledge agreed to sell the plaintiff a 1946 Ford automobile for $895, and that the amount of money in excess of the $895 that plaintiff paid on the agreed purchase price to defendant on the purchase of said 1946 Ford automobile

was the sum of $115.75, and that such sum was compensation to plaintiff in excess of ten per cent per annum for the use or detention of his money; (10 and 11) that about September 4, 1952 plaintiff made a payment of $15 to defendant Sledge and that such sum was credited to plaintiff's account for the purchase of the 1946 automobile; (12 and 13) that on May 14, 1953 plaintiff made a payment of $15 to defendant and that such sum was credited to plaintiff's account for the purchase of the 1946 Ford automobile; (14 and 15) that defendant represented to plaintiff that he would not charge plaintiff for the repairs connected with the installation of a new motor on or about April 1951 for the 1947 Ford automobile and that plaintiff relied on such representation. Special Issue 15a is:

"Do you find from a preponderance of the evidence that, except for such belief and reliance on such representation, if any you have heretofore found, Murphy would not have signed the order of April 28, 1951, authorizing repairs on the 1947 Ford automobile? Let the form of your answer be 'He would not' or 'He would.'" and the jury answered "He would."

Special Issue No. 16 is:

"Do you find from a preponderance of the evidence that the defendant Sledge did not have any repairs made to the 1946 Ford automobile on or about January 31, 1952? Let the form of your answer be 'He did not' or 'he did'," and the jury answered "He did not."

Special Issue No. 17 is:

"Do you find from a preponderance of the evidence that there is any sum of money due by plaintiff Murphy to defendant Sledge on the transaction of January 31, 1952? Answer 'Yes' or 'No.'" and the jury answered "No."

The court overruled defendant's motion for judgment non obstante veredicto and granted plaintiff's motion for judgment and in the judgment we find this recital:

"* * * and the court having heard such motion, and such additional considerations and findings as were authorized by law having been had and made, and the Court being of the opinion that judgment should be rendered against defendant, David P. Sledge, Individually and d/b/a David P. Sledge Auto Company in the sum of $1252.00."

and decreed that plaintiff Murphy do have and recover of David P. Sledge Individually and d/b/a David P. Sledge Auto Company the sum of $1,252 with interest thereon at the rate of six per cent per annum from the date of judgment. The judgment further decreed that all notes and conditional sales contract of Murphy to Sledge and David P. Sledge Auto Company, and particularly the note and conditional sales contract of January 21, 1952 and any and all liens of David P. Sledge and David P. Sledge Auto Company upon the 1946 Ford Tudor Automobile, Motor No. 99A–1323113 owned by John L. Murphy are cancelled and any purported balance thereon is held null and void, and David P. Sledge Individually and David P. Sledge Auto Company is ordered to execute a release upon the title certificate upon said automobile and deliver said title certificate with said release thereupon to John L. Murphy and is further ordered to refrain from making any further direct or indirect contacts upon John L. Murphy or his wife in an effort to collect any such balance aforesaid or any portion thereof.

The judgment is assailed on three points: (1) The error of the court in refusing to submit to the jury affirmative defensive issues properly and timely requested by defendant; (2) the error of the court in granting a judgment based upon statutory damages for charging usurious interest where there is no evidence of or issue submitted to the jury on intent to charge usurious interest by the payee of the contracts involved; (3) the error of the court in granting a judgment based upon statutory damages for charging usurious interest where fraud is alleged by the payor or obligor in the inception of the contracts

upon which the claim for damages was based.

Plaintiff went to trial on his first amended original petition and in that petition he alleged substantially that on March 31, 1950 he purchased a 1941 Ford automobile from defendant for $295, of which plaintiff paid $60 in cash and was required by defendant to execute a note payable to defendant in the sum of $385.68, payable in weekly installments of $7.50; that plaintiff paid $416.50 on this note and then traded the 1941 Ford to defendant for a 1947 Ford priced at $795; that $350 was allowed plaintiff for his 1941 Ford; that defendant claimed plaintiff still owed him $49.18 on the first note and added this amount to the second note, which came to $1,050; that plaintiff paid $86.50 on the second note and on April 28, 1951 defendant performed certain repairs on plaintiff's 1947 Ford and charged $212.75 for same and required plaintiff to execute a note for $1,267.50, including the balance on the former note; that plaintiff paid $258 on this first note; that in August 1951 plaintiff's car was severely damaged and defendant thereupon collected $650 from the insurance company and $100 from plaintiff, plus a salvage fee amounting to at least $100; that on September 22, 1951 defendant sold plaintiff a 1946 Ford for $895 and had plaintiff sign a new note for $1,260, payable in weekly installments of $17; that plaintiff paid $219 on this note and on January 31, 1952 defendant required plaintiff to execute a new note for $1,100, payable in weekly installments of $16; that plaintiff paid $766.50 on this fifth note; that included in the charges in this fifth note was usurious interest in the amount of $968.50 paid by plaintiff; that plaintiff was entitled to recover double said amount $1,801.36; that in connection with each of said transactions plaintiff was required to sign an additional sales contract which had been cancelled because plaintiff had long since paid the amount loaned him; that defendant had threatened to foreclose on plaintiff's car and should be enjoined from so doing.

Plaintiff in his brief says that he was required to sign a conditional sales contract dated March 30, 1950 in order to purchase the 1941 Ford from Sledge; that the contract recited the $51 cash payment and a balance of $7.50 per week for 51 weeks, plus $18. Plaintiff introduced defendant's records of plaintiff's payments on said contract showing payments of $336.50 up to March 17, 1951; that plaintiff, on March 17, 1950, was required to sign a conditional sales contract on the purchase of the 1947 Ford with a deferred balance of $70 per month for 15 months, upon which plaintiff paid $86.50 by April 28, 1951. Plaintiff on April 28, 1951 signed a note for $1,267.50, payable $19.50 per week in connection with which no new conditional sales contract was issued, on which note plaintiff paid $258 prior to September 24, 1951. Sledge admitted that Murphy and the insurance company paid him another $750 when the car was damaged; he also admitted getting a salvage for the 1947 Ford, which he stated to be $40 to $50; that on September 22, 1951 defendant required plaintiff to sign a conditional sales contract for $17 per week for 69 weeks and then $27 per week for three weeks and then $6 for one week covering a 1946 Ford. Sledge testified this was figured on a time price basis, but never stated the price; that on this note Murphy paid $219; that on January 31, 1952 defendant had plaintiff sign a note for $1,100 payable $15 per week; that on that note plaintiff paid $691.75. Plaintiff testified to the effect that the only price Sledge quoted him for the 1941 Ford was $295, of which he paid $60 down; that he signed instruments in blank for the balance, on this as well as all his other transactions with Sledge. He testified that about a year later he bought a 1947 Ford on which Sledge quoted him one price only of $795, to which he agreed; and further testified that thereafter he had a wreck and Sledge agreed to sell him a 1946 Ford for $100 more than the 1947 Ford. Plaintiff's wife testified likewise, specifying the price on the 1946 Ford at $895.

Plaintiff tendered in evidence what purports to be a contract of conditional sale covering the trade entered into between

appellant and appellee in March 1950. We find nothing in this contract to indicate that the sale made by defendant to plaintiff in March 1950 was a time sales price as distinguished from a cash sales price. We have also examined carefully the contract of conditional sale entered into between the appellant and appellee covering the sale of the car on the 17th of March 1951 between the parties and we find nothing in this contract to indicate that the transaction between the parties was a time sales price as distinguished from a cash sales price. We do not find that either plaintiff or defendant offered any written contract concerning the sale made between the parties in September 1951, which involved the 1946 Ford automobile inquired about in Issues 7, 8 and 9. As we have previously stated, the plaintiff's wife testified that the price of the 1946 Ford was $895. . We think the record here made brings this cause within the rule announced in Associates Investment Co. v. Baker, Tex.Civ. App., 221 S.W.2d 363, er. dis., and Associates Investment Co. v. Sosa, Tex.Civ. App., 241 S.W.2d 703, er. dis., and cases there cited.

Let us consider first appellant's first point, which is to the effect that the court erred in refusing to submit to the jury his affirmative and defensive issues. Going back to the court's charge we find that the foregoing point applies to Special Issues Nos. 1, 4 and 7. Issue No. 1 was to the effect that, Do you find from a preponderance of the evidence that on or about March 30, 1950 the defendant Sledge agreed to sell the plaintiff Murphy the 1941 Ford automobile for $295? Issue No. 4 was to the effect, Do you find from a preponderance of the evidence that on or about March 17, 1951 the defendant Sledge agreed to sell the plaintiff Murphy the 1947 Ford automobile for $795? Issue No. 7 was substantially, Do you find from a preponderance of the evidence that on or about September 22, 1951 the defendant Sledge agreed to sell to plaintiff Murphy the 1946 Ford automobile for $895? The jury answered each of the foregoing issues in the affirmative.

The appellant excepted to Issue No. 1 substantially on the ground that there was no evidence to support the submission of such issue, and for the further reason that the submission of such issue as submitted is in effect a comment on the weight of the evidence inasmuch as it requires a finding of a definite sum or amount. We think the foregoing objections are without merit.

In paragraph 3 of his objections we find this statement: "Now, I would like the same objection and exception to Special Issues 4, 6, 7 and 9." This last objection is in direct conflict with the provisions of Rule 274, Texas Rules of Civil Procedure, which says in part: "No objection to one part of the charge may be adopted and applied to any other part of the charge by reference only."

The defendant also submitted three requestioned special issues. One was substantially to the effect, Do you find from a preponderance of the evidence that the transaction entered into between the parties on or about the 30th of March 1950 was based upon a time sales price (this issue relates to Special Issue No. 1 in the court's main charge); two was substantially, Do you find from a preponderance of the evidence that the transaction entered into between the parties on or about the 17th of March 1951 was based upon a time sales price (this issue relates to Special Issue No. 4 of the court's main charge); and three was substantially, Do you find from a preponderance of the evidence that the transaction entered into between the parties on or about the 22nd of September 1951 was based upon a time sales price (this issue relates to Special Issue No. 7 of the court's main charge). Each of these special requested issues was refused, to which the appellant excepted.

Appellant says in effect that each of the issues was tendered by the pleadings and the testimony found on pages 130 and 153 of the Statement of Facts.

Let us consider first the pleading. Appellant went to trial on his first amended

original answer. In paragraph 15 we find this averment: "This defendant specially denies that there is any usury charged in any of the contracts alleged and set forth in the petition of plaintiff, and would show to the court that in each and every instance involved herein the transaction entered into was a part of a contract of conditional sale based on a time selling price, which time selling price was accepted by the purchaser and plaintiff herein, and that plaintiff was advised of both cash price involved and time sales price, and chose to execute the conditional sales contract based upon the time sales price, of which he was well aware." This is the sole and only defensive issue plead.

We quote the pertinent parts of the testimony relied on by appellant:

"Q. I will ask you whether or not on the first transaction that you had with John Murphy here, you explained to him the difference between the two prices for the automobiles? A. Yes, sir. * * *

"Q. I will ask you, did you have any occasion to discuss, during the transactions involved with John L. Murphy where they traded in or purchased a new used automobile or a different used automobile, the various prices of those automobiles? A. Yes, we did.

"Q. And will you tell us what you discussed on these occasions? A. We always quote a cash price, and then we also quote a time price.

"Q. Now, I will ask you whether or not that was done in each of the instances involved here? A. Yes, it was.

"Q. And at the time, and on those occasions, did either John Murphy or Tecumseh Murphy raise any complaint about the amount of the contract of Conditional Sale? A. No, they did not. We got together on it satisfactorily."

With reference to the first contract the plaintiff Murphy testified in part:

"Q. * * * Who did you talk to there? A. Well, I bought the car from Mr. Sledge.

"Q. Is he the one that you talked to? A. Yes, sir, he was the one that I paid the payment, and he is the one that sold it to me.

"Q. Did he tell you the price of the car? A. Yes.

"Q. What did he tell you was the price of the car? A. $295.00.

"Q. Did he ever tell you any other price for that car? A. No."

█ We do not believe that the appellant's pleadings and testimony in this record entitles him to any relief under Rule 279, T.R.C.P. We think his pleading is too vague to afford him any affirmative relief and certainly there is nothing in the testimony to indicate that he is entitled to any affirmative relief because neither the contract price nor the time sales price relating to each contract was specially pleaded by him, nor did the testimony on which he relies identify the contract price as being different from the time sales price, and we believe that the charge of the court as submitted comes within the provisions of Rule 279 aforesaid. See also Rule 1, T.R.C.P., and Yellow Cab. & Baggage Co. v. Green, Tex.Civ.App., 277 S.W.2d 92, point p. 95.

Appellant in his brief says substantially that the appellant alleged that the transactions involved in this matter were based upon contracts of conditional sale and that the transactions were based upon a time selling price, and that since appellant in his testimony testified that he explained the difference between cash and time sale price, and since appellee testified that no time sale price was discussed, there was an issue raised as to whether or not the price agreed upon between the parties was the time sale price or cash price. We are

not in accord with this view for reasons heretofore stated.

 Appellant's second point is substantially that the court erred in granting a judgment based upon statutory damages for charging usurious interest where there is no evidence of or issue submitted to the jury on intent to charge usurious interest by the payee of the contracts involved. First of all, Point 2 is not a correct statement of the law, in that it is too restrictive and inapplicable to the factual situation here before us. In Federal Mortgage Co. v. State National Bank of Corsicana, Tex.Civ.App., 254 S.W. 1002, 1005 (er. dis.), we find this statement: "Though it may not have been usurious in its inception, if appellants, by the use of the note and their construction of the contract, handled the transaction so as to net them more than 10 per cent. for the use of their money, it thereby became usurious." See also Shear Co. v. Hall, Tex.Com.App., 235 S.W.195. In Donoghue v. State, Tex.Civ. App., 211 S.W.2d 623, 629 (er. ref. n. r. e.), we find this statement: "Smith's motives had nothing to do with the validity or legal effect of the transaction, and could not have been successfully urged as a defense to defeat enforcement of the obligations he had incurred therein." Here we have a transaction between appellant and appellee and the evidence is without dispute that appellee was charged more than the legal rate, so whether appellant did or did not intend to charge usurious interest would be of no effect under the plain letter of the statute. See cases collated under 37 Tex. Dig., Usury, ■■■ See also Art. 5069, Vernon's Ann.Civ.Stats.; McDaniel v. Orr, Tex.Com.App., 30 S.W.2d 489.

 We have examined appellant's Point 3, which is that the court erred in granting judgment based upon statutory damages for charging usurious interest where fraud is alleged by the payor or obligor in the inception of the contracts upon which the claim for damages was based, and we find it to be without merit. See Autocredit of

Ft. Worth, Inc., v. Pritchett, Tex.Civ.App., 223 S.W.2d 951 (er. dis.) and authorities cited.

Accordingly, the judgment of the trial court is affirmed.