John B. KOLLMAN, Appellant,

v.

Wyman W. HUNNICUTT, Appellee.

No. 16580.

Court of Civil Appeals of Texas.

Fort Worth.

Dec. 4, 1964.

D. C. Gandy, Fort Worth, for appellant.

David L. Boren and Ernest May, Fort Worth, for appellee.

MASSEY, Chief Justice.

This is a usury case. Wyman W. Hunnicutt alleged that John B. Kollman had exacted of him interest in excess of 10%. Trial was before the court without a jury, and judgment for Hunnicutt was rendered in an amount double that found to have been the interest paid.

Hunnicutt desired to enter the retail automobile business and Kollman agreed in writing with him on a plan whereby the financing necessary to the enterprise would be made available. Incident to the plan an account of Kollman was opened in a prescribed bank, the account to be made available for Hunnicutt's needs in purchasing automobiles. Ten thousand dollars of Kollman's funds was used to open the account. Under the contract Hunnicutt was authorized to draw drafts upon the account. However, Kollman was afforded the opportunity to honor or dishonor the drafts so drawn on each occasion. In other words Kollman was free to provide or withhold financing on each individual "car deal" Hunnicutt made, depending upon whether he desired to honor the draft drawn on the account to pay for vehicle or vehicles purchased. Kollman would honor the drafts if in proper form and well secured by title certificates. These certificates would be checked and retained by Kollman pending Hunnicutt's repayment of the principal indebtedness created by each individual transaction. Each draft was to be repaid "in full" within not less than sixty days, and Hunnicutt was obliged to pay, in addition and at the time of principal reimbursement, amounts specified on a schedule of "draft fees". Depending upon draft amounts said "draft fees" were prescribed to be $12.50 to $20.00 if paid within 30 days,—$10.00 more for any forbearance extended 30 days. The minimum of "draft fees" per month was prescribed to be $200.00. The fee for any draft dishonored (turned down) was $10.00. The minimum "draft fee" for the largest amount permitted under the contract, $1,000.00, would be $30.00 for sixty

days use thereof. If the draft should be for $30.00 (the smallest shown to have actually been drawn) the "fee" would be $22.-50 for detention of Kollman's money sixty days.

The evidence is that Kollman deposited $10,000.00 to his own credit in the account contemplated by the contract. Hunnicutt used the account, under the provisions of the contract, for 13½ months. Within not more than that period Kollman was returned his $10,000.00, with $2,335.00 in addition—as calculable "draft fees" paid under the contract. If the $2,335.00 was interest there is no doubt that it was usurious interest, since it exceeded 10% as applied to what would be the principal.

The points of error brought forward on appeal are such that entitle us to proceed upon the premise that there is no question of the propriety of the amount of the judgment rendered by the trial court, if that court was correct in holding that Kollman did, in fact, exact usurious interest of and from Hunnicutt. Except for one point in which complaint is made because of the exclusion of evidence tendered on trial, the questions to be resolved are whether the evidence established Hunnicutt's cause of action under Vernon's Ann.Tex.Civ.St., Art. 5073.

Art. 5073 provides, relative to situations in which a greater rate of interest than ten per cent shall have been received or collected, that "the person paying the same * * * may by an action of debt recover double the amount of such interest from the person, firm or corporation receiving the same."

On trial both Hunnicutt and Kollman disclaimed any intention to charge or pay usurious interest. If usury were criminal, and Kollman on trial charged with the crime, such testimony bearing upon the parties' mutual innocence of criminal intent might be important. But this is a civil case; all that is involved is money. In some usurious transactions neither the lender nor the borrower is guilty of intent to violate the usury law. Considered in reference to our usury laws, however, oral evidence given in denial of such intent is without force in the face of proven contractual provisions, the necessary effect of which provides for usurious interest. In such instances the "intent" is apparent: *res ipsa loquitur.* See Campbell v. Oskey, 239 S.W. 332 (El Paso Civ.App., 1922, no writ), and cases cited. In the case before us it is not to be doubted that if the "financing" provided by Kollman was a loan, and the compensation therefor, provided by contract, "for the use, forbearance, or detention of money", it is indeed a usury case.

Kollman contends that the transaction was one under which the parties entered into a joint venture, or alternatively, one in which the compensation provided by contract was for the extension or loan of Kollman's credit to Hunnicutt. Kollman further suggests that charges he made in connection with the individual transactions, in addition to what part of the total compensation might properly constitute "interest", would not render the whole transaction usurious when made in good faith and intended as compensation for the risk, trouble and expenses incurred.

In Campbell v. Oskey, 239 S.W. 332, supra, reference is made to Jackson v. Cassidy, 68 Tex. 282, 4 S.W. 541 (1887), with quotation therefrom as follows: " 'In the ordinary affairs of life, money advanced upon such securities, with the understanding that both principal and interest may be collected by realizing upon the securities, is considered a loan. A debt is created; otherwise the party advancing the money has no right to recover principal together with interest on the amount advanced. Having the full effect of a loan, it must be treated as such, considered in reference to our usury laws, otherwise the few features of the transaction which give it a different appearance would furnish a device by which

these laws might be evaded altogether.'" On the aspect of joint adventure we consider the language appropriate to the instant case, certainly entitling the trial court, as the fact finder, to decide there was no joint venture.

Kollman having made the loan (or having himself supplied the "financing"), the trial court was obviously entitled to decide that the transaction was not one wherein the compensation provided was for the loan or extension of Kollman's credit. Greever v. Persky, 140 Tex. 64, 165 S.W.2d 709 (1942).

Kollman has cited Oil City Motor Co. v. C. I. T. Corporation, 76 F.2d 589, 104 A.L. R. 240 (10th Cir. 1935). In that case automobiles were in the possession of the automobile dealer, but the relation of bailor and bailee was held to exist with the dealer a trustee for the corporation holding title. It was obvious that the automobiles were acquired upon the credit of the corporation not the dealer. We do not consider the case applicable authority. See, however, the annotation following the opinion at 104 A.L.R. 245, "What amounts to sale of credit as distinguished from a loan as regards usury law."

As applied to the "charges" as compensation for the risk, trouble and expenses incurred having been made in good faith by Kollman it is readily perceived from the record that they merely amounted to an investigation of the value of security pursuant to each "purchase" draft transaction. This is to be treated as constituting part of the expenses incurred in making or carrying a loan, for which a lawfully charged rate is itself to be considered as providing adequate compensation. 58 Tex.Jur.2d 107, "Usury", § 31, "(Commissions and Other Expenses Incident to Loan)—In general." Our circumstances do not fit into those of the cases found beginning at p. 896 "Charges for accepting and paying drafts" under 21 A.L.R. 797, Anno.: "Usury: expenses or charges incident to loan of money." (See also supplements at 53 A.L.R. 743, 63 A.L.R. 823, and 105 A.L.R. 795.)

We have no doubt but that the trial court's factual findings and factual conclusions, as underlying and supporting the judgment rendered, if necessary to be resolved as questions of fact, were all and several raised and supported by the evidence in the record,—and the court's decisions thereof were not against the weight and preponderance of the evidence.

■ On the trial Kollman called a banker to testify to "the custom and operation of the floor plan business in Tarrant County, Texas". Objection thereto was sustained and the testimony was not allowed. No bill of exceptions was made exhibiting the testimony tendered. Aside therefrom it is elementary that evidence of the practice of moneylenders in respect to any custom or system whereby usurious interest is exacted would be inadmissible to validate any transaction under which such has been accomplished. Our usury statutes were enacted by the Legislature. Evidence of any usage or custom in contravention of statute would be inadmissible for the purpose of evading or avoiding the provisions thereof. We overrule the point of error whereby complaint is made of the court's exclusion of such evidence.

Judgment is affirmed.