IMPERIAL CORPORATION OF AMER-
ICA, Plaintiff-Appellee-Cross-
Appellant,

v.

FRENCHMAN'S CREEK CORPORA-
TION et al., Defendants-Appel-
lees-Cross-Appellants,

Layton A. Humphrey, Wm. E. Robertson,
Defendants-Appellants-Cross-
Appellees.

No. 30853.

United States Court of Appeals,
Fifth Circuit.

Jan. 10, 1972.

Rehearing Denied Feb. 1, 1972.

---

John L. Roach, Roach & Robertson, Dallas, Tex., for Layton A. Humphrey.

Robert S. Mizell, Howell, Johnson, Mizell, Taylor, Price & Corrigan, Dallas, Tex., for Wm. E. Robertson.

John H. McElhaney, Dallas, Tex., for Imperial Corp. of America; R. W. Calloway and Turner, Rodgers, Winn, Scurlock & Sailers, Dallas, Tex., of counsel.

Charles E. Tobin, Dallas, Tex., for Frenchman's Creek Corp., and others.

Before GOLDBERG, GODBOLD and RONEY, Circuit Judges.

GODBOLD, Circuit Judge:

This diversity suit concerns a claim of usury under Texas law in connection with a large construction loan.

Defendants proposed to build near the campus of a Texas university a dormitory to be owned by them. They secured from an insurance company a commitment for long term permanent financing, and negotiated with plaintiff Imperial for short term financing to provide funds for construction. On August 31, 1966 defendants and Imperial entered into a lengthy and detailed written Loan Agreement providing that Imperial agreed to lend to defendants during the period ending December 1, 1967 sums of money the unpaid principal amount of which should not exceed at any one time $4,500,000, to be used for construction of the dormitory. Defendants agreed to execute and deliver to Imperial their promissory note payable "on or before November 1, 1967, unless otherwise extended as provided herein," in the principal sum of $4,500,000, with interest payable quarterly on the unpaid balance "at the rate of $8\frac{1}{2}\%$ per annum from the date of any advancement of funds" to defendants by Imperial.

The note provided that it was "issued pursuant to" the Loan Agreement. While the note recited an amount certain of $4,500,000, the Loan Agreement provided that the principal actually owing on the note would be the aggregate of all advances made by Imperial, less any payments made on principal, with interest to accrue only on the amount of each advance from the date such advance was made. The Loan Agreement tied the right of defendants to obtain advances to the progress of construction of the dormitory and the schedule of progress payments.

The Loan Agreement required that the note be secured by a mortgage and deed of trust covering the dormitory site. Defendants were required on completion of the dormitory and on or before the maturity of the note and any renewal or extension thereof to consummate the permanent loan, for which they held a commitment in the principal amount of at least $3,700,000, and to apply the proceeds to payment of the construction loan. Imperial agreed to renew and extend the note if the permanent loan commitment was extended.

The Loan Agreement recited that Imperial desired to acquire for investment purposes a 25% undivided interest in the dormitory property, to be conveyed to it in lieu of payment of 25% of the balance of the construction loan (after application of proceeds of the permanent loan.) The remaining 75% of the balance would be paid to Imperial, or, at its option, Imperial could accept a new note therefor, with interest at 8½% per annum, payable in monthly installments over four years, and secured by a second lien mortgage and deed of trust plus assignment of all net revenues from operation of the dormitory.

Defendants were required by the Loan Agreement to reimburse Imperial for costs, expenses and legal fees in an amount not to exceed $22,500 and to pay a "loan or commitment fee" of $67,500.

The promissory note and the deed of trust were executed in the form agreed upon, and delivered, around September 16, 1966. The deed of trust contained the following saving clause:

No provision of this instrument or of the Notes shall require the payment or permit the collection of interest in excess of the maximum permitted by law. If any excess of interest in such respect is herein or in the notes provided for, or shall be adjudicated to be so provided for herein or in the Notes, the provisions of this paragraph shall govern, and neither the Mortgagors nor their heirs, successors and assigns shall be obligated to pay the amount of such interest to the extent that it is in excess of the amount permitted by law.

The initial advance was made September 30, in the amount of $860,000, from which there was deducted (or advanced to defendants and paid back to Imperial) the commitment fee of $67,500 and reimbursement of expenses in the amount of $22,500. Thereafter advances were made from time to time until they totalled $4,500,000, the last advance being made July 1, 1968.[1] Defendants made interest payments quarterly as provided.

On July 30, 1968 the permanent loan was closed. Meanwhile because of a change in the law Imperial was forbidden to acquire the 25% ownership interest. The parties executed an amendment to the Loan Agreement providing that defendants would pay $4,000,000 principal on the note ($3,700,000 from the permanent loan plus $300,000 cash) and Imperial would accept in renewal and extension of the $500,000 balance defendants' note for $500,000, payable in twelve months, with interest at 8½% per annum, payable quarterly. The note was to be secured by Imperial's retaining a $500,000 interest in the original deed of trust, and by a new deed of trust as well, but all of Imperial's liens to be subordinate to the $3,700,000 first lien and the lien of a second mortgage loan to be procured by defendants and not to exceed $800,000. The transactions were consummated on July 30 under the amended terms, except it appears that Imperial subordinated its liens securing the new note to second liens securing the individual defendants on notes payable to them by the corporate defendant aggregating $800,000.

Defendants defaulted on the $500,000 note, after making payments of some of the interest but no principal. Imperial sued. Defendants raised the defense that the interest charged and paid in the loan transaction exceeded the maximum interest allowable by Texas law of 10% per annum,[2] causing all interest to be

1. The note was due November 1, 1967. The record is silent as to whether there was a formal or an informal extension, or the parties simply considered that the provisions of the Loan Agreement were self-executing in this respect.

2. Tex.Rev.Civ.Stat.Ann.:
   Art. 5069–1.01. *Definitions*
   "(a) 'Interest' is the compensation allowed by law for the use or forbearance or detention of money; provided however, this term shall not include any

forfeited, with the result that rather than being indebted to Imperial the defendants in fact had overpaid by some $4,500. This defense embraces several contentions. (1) The $22,500 reimbursement of expenses actually was disguised interest. The District Court found that this item was not interest. We affirm that finding. (2) The $67,500 commitment fee was interest. (3) The $67,500, since actually charged and paid in the first twelve months of the loan, must be considered as interest for that period alone. The sum of this item and the interest at 8½% per annum on advances from time to time made exceeded the maximum interest allowable for that first twelve months. (4) The tainted interest causes Imperial to lose its right to any interest. (5) All payments of interest that have been made must be credited against the outstanding principal of the $4,500,000 note as and when made, and then against the outstanding principal of the $500,000 note.

The District Court in a nonjury trial found that the $67,500 commitment fee was interest but that the $22,500 reimbursement of expenses was not. It found that interest payments made during the first year (described as twelve months beginning September 16, 1966), at the 8½% rate, plus the $67,500, produced a sum greater than the maximum allowable interest on advances from time to time made during the twelve months,

calculated at 10% per annum. However, the trial court declined to treat the $67,500 as applicable to only the first twelve months but "spread" it over the life of the loan, beginning September 16, 1966, the date on which the note was executed, and extending to July 30, 1968. The court aggregated the interest paid during that period, including the $67,500, and found that it exceeded by $3,835.88 the maximum interest allowable by Texas law on the amounts from time to time due during that period.[3] The court found that the excess of $3,835.88 would have been usurious interest absent the saving clause, but that by reason of that clause Imperial was entitled to collect the maximum allowable interest and need only credit the defendants the sum of $3,835.88 against their obligation on the $500,000 note.

The note contained an acceleration clause. The court found that if default and acceleration had occurred during the first twelve months usurious interest would have resulted. The saving clause was held to prevent this contingency from giving rise to usurious interest.

The District Court allowed recovery of the principal balance on the $500,000 note, plus unpaid interest thereon, after giving defendants credit for the excess interest of $3,835.88, calculated as described above. Defendants appealed.

■ The finding that the $22,500 reimbursement of expenses was not in-

time price differential however denominated arising out of a credit sale."

\* \* \* \* \*

Art. 5069–1.02. *Maximum rates of interest*

"Except as otherwise fixed by law, the maximum rate of interest shall be ten percent per annum. A greater rate of interest than ten percent per annum unless otherwise authorized by law shall be deemed usurious. All contracts for usury are contrary to public policy and shall be subject to the appropriate penalties prescribed in Article 1.06 of this Subtitle."

\* \* \* \* \*

Art. 5069–1.04. *Limit on rate*

"The parties to any written contract may agree to and stipulate for any rate

of interest not exceeding ten percent per annum on the amount of the contract; and all other written contracts whatsoever, except those otherwise authorized by law, which may in any way, directly or indirectly, provide for a greater rate of interest shall be subject to the appropriate penalties prescribed in this Subtitle."

3. The court calculated maximum allowable interest on the basis that the initial advance of funds in the amount of $860,000 should be treated as a loan of only $792,500. The correctness of this is discussed later.

terest is not plainly erroneous. There was ample evidence that Imperial paid more than that amount in fees for legal services and for inspection of the premises as the work progressed. Bond fide fees for services of this nature, paid to the lender's special agents and not participated in by the lender, are not considered as interest. *See* Greever v. Persky, 140 Tex. 64, 165 S.W.2d 709 (1942); Nevels v. Harris, 129 Tex. 190, 102 S.W.2d 1046, 1049 (1937); Miller v. Gibralter Savings & Bldg. Assn., 132 S. W.2d 606 (Tex.Civ.App.1939).

■■ Imperial does not contest the finding that the $67,500 commitment fee was "front end" interest.[4] We conclude that, for the purpose of determining whether the loan was usurious, the trial court correctly rejected the defendants' view that the $67,500 interest figure was required to be considered as interest for only the first twelve months of the loan; and, second, we conclude that for the purpose of determining whether the loan was usurious, the $67,500 should be considered as interest for the life of the loan, commencing on September 16, 1966 and extending to the due date of the $500,000 note sued on. In reaching these conclusions we consider the agreements of the parties, the peculiarities of interim construction financing as exemplified by the arrangements made in this instance, and the law and the policies of the State of Texas.

Since the commitment fee is interest by operation of law and not because the parties in their dealings with each other treated it as such, the agreements here do not specify the period for which this interest is considered to be "payment for the use of money." If, as in this case, there is a saving clause, Texas courts will give effect to it by spreading over the life of the loan the impact of the judicially determined interest. For example, in Nevels v. Harris, *supra*, a front end loan fee was judicially determined to be interest and was considered to be applicable to the life of a five year loan bearing annual interest payments. The loan was found not to be usurious, although usury would have resulted had the entire front end fee been considered applicable to the first year alone. As to the saving clause, the court held:

> It is the rule that all parts of a contract must be given effect if it is reasonably possible to do so. It is also the rule that men are presumed to have intended to obey the law unless the contrary appears . . . If the [saving clause] can be given effect, and, as already said, it must be given some effect if it is reasonably possible to do so, it must be held to operate to deny the noteholder the right, in any event, to collect usury. In other words, it denies the noteholder the right to collect more than the principal debt and 10 per cent. interest per annum from the time the borrower had the use of the money until he should repay it.

102 S.W.2d at 1049–1050. The court cited Eubanks v. Simpson, 90 S.W.2d 291 (Tex.Civ.App.1936) and Adleson v. B. F. Dittmar Co., 124 Tex. 564, 80 S.W.2d 939 (1935). In *Eubanks* a front end "commission and title fee" was found to be interest and was spread over a ten year loan with the result that the interest did not exceed the statutory maximum, the court saying:

> If the contract for the use and detention of the principal debt is not a sum greater than such debt would produce at 10 per cent. per annum from the time the borrower had the use of the money until it is repaid, it is not usurious. (citations omitted.)

90 S.W.2d at 292. *Adleson* was a suit for a statutory penalty of double the amount of usurious interest payments paid within the two years before suit, so a determination of how much interest had been paid and during what periods was essential. The Commission of Appeals, in an opinion adopted by the Texas Supreme Court, found that a front end fee was interest and applied it to

---

4. *See* Art. 5069–1.01, Texas Revised Statutes, footnote 2, supra.

the full five year life of the loan. It rejected the approach of the Court of Civil Appeals,[5] which had treated the full amount of the fee as first year interest.

Defendants rely upon Terry v. Teachworth, 431 S.W.2d 918 (Tex.Civ.App. 1968), a case where the loan instruments included a saving clause, yet the court found that the lender had called for usurious interest. But the facts of *Terry* offered no possible scope for application of the saving clause. The question of whether front end fees were to be applied to a shorter period than the life of the loan was not an issue. The jury had found that an origination fee and a service fee were interest. The duration of the loan was less than a year, and it had gone to foreclosure within twelve months. When front end interest was combined with the stated interest in the loan agreement, the total exceeded a rate of 10% per annum, spread over the life of the loan. The only way the court could have given effect to the saving clause would have been to spread the front end interest over a period longer than the life of the loan. *Terry* does not say that, when possible, a saving clause will not operate to permit spreading of front end interest up to the life of the loan.

■ The saving clause cases are but precisely targeted applications of more general rules of contract construction. The question of whether usury exists is ascertained from the dominant purpose and intent of the parties embodied in the contract interpreted as a whole and in the light of attending circumstances and of the governing rules of law that the parties are presumed to have intended to obey. Walker v. Temple Trust Co., 124 Tex. 575, 80 S.W.2d 935 (1935). All papers connected with the transaction are considered. Greer v. Franklin Life Ins. Co., 109 S.W.2d 305 (Tex.Civ.App.1937). The Texas courts will find there is no usury if "the language of the contract, taken as a whole, is . . . fairly susceptible of that construction," Walker v. Temple Trust Co., 60 S.W.2d 826, 828 (Tex.Civ. App.1933), aff'd, 124 Tex. 575, 80 S.W. 2d 935 (Tex.Comm.App.1935); "unless the contract by its express and positive terms evidences an intention which requires a construction that unearned interest was to be collected in all events," Peoria Life Ins. Co. v. Harton, 84 S.W. 2d 864 (Tex.Civ.App.1935); "unless, upon a fair and reasonable interpretation of all its terms, it is manifest that the intention was to exact more interest than allowed by law," Pan-American Life Ins. Co. v. Boyd, 124 S.W.2d 917, 919 (Tex.Civ.App.1938).

Arbitrary allocation of the $67,500 to the year in which paid has the apparent advantage of certainty, instantaneously and at the threshold, but the advantage is more apparent than real. Ordinarily, the question of whether an item not treated as interest actually is interest will not arise at the outset of the loan but long afterwards in judicial proceedings, and it is not foreordained that the issue of interest versus noninterest will be determined in favor of the borrower. Thus in the present case we affirm the finding that the $22,500 of reimbursed expenses (including inspection services) was not interest, while in Terry v. Teachworth, *supra*, the court affirmed a finding that a similar "service fee" was interest. If the item is found to be interest, the same judicial proceeding can adjudicate the issue of appropriate allocation.

■ The approach we take is consistent with Texas cases dealing with instruments containing both acceleration clauses and saving clauses. A creditor's past, unexercised option to accelerate maturity upon borrower's default will make a transaction usurious if the contract terms would have called for default payments in excess of principal plus 10% interest, Shropshire v. Commerce Farm Credit Co., 120 Tex. 400, 30 S.W.2d 282 (1930), aff'd on rehearing,

---

5. B. F. Dittmar Co. v. Adleson, 75 S.W.2d 1100 (Tex.Civ.App.1934).

120 Tex. 400, 39 S.W.2d 11, cert. denied, 284 U.S. 675, 52 S.Ct. 130, 76 L.Ed. 571 (1931), but if the contract also contains a saving clause, this expression of the parties' intent will be given effect, and unless acceleration occurs, the loan will be upheld against a usury charge, Nevels v. Harris, *supra*.[6]

Cases in which there was no saving clause, and the court did not spread interest over the life of the loan, are not determinative. *See, e. g.*, Bothwell v. Farmers & Merchants State Bank, 120 Tex. 1, 30 S.W.2d 289 (1930); Shropshire v. Commerce Farm Credit Co., *supra;* Dallas Trust & Savings Bank v. Brashear, 39 S.W.2d 148 (Tex.Civ.App. 1926), aff'd with respect to this issue, 65 S.W.2d 288 (Tex.Comm.App.1933); Hewitt v. Citizens Savings Bank & Trust Co., 119 S.W.2d 1073 (Tex.Civ. App.1937); Commerce Farm Credit Co. v. Ramp, 116 S.W.2d 1144 (Tex.Civ. App.1938), aff'd, 135 Tex. 84, 138 S.W. 2d 531 (Tex.Comm.App.1940). In Galveston & H. Investment Co. v. Grymes, 94 Tex. 609, 63 S.W. 860 (1901), relied upon by defendants, there was no saving clause, and the court found usury but said, "If the transaction was such as to render the intention of the parties doubtful, the court would adopt that construction which would attribute to them a legal intention." 63 S.W. at 861. The agreement in Temple Trust Co. v. Sewell, 133 Tex. 417, 126 S.W.2d 943 (1939), had no saving clause, and the court distinguished Nevels v. Harris and like cases on that ground. *Id.* at 947 of 126 S. W.2d.

▪ Having concluded that the $67,500 should be applicable to the life of the loan, we turn to the question of what that period is in this case. The District Court found the beginning date to be September 16, 1966, when the note was executed. An argument can be made that this is erroneous, because on September 16 Imperial had only agreed to lend construction funds, with interest to be charged on advances as subsequently made, but had not actually begun the advances. The finding that the $67,500 is interest tends to indicate that the correct date would be September 30, 1966, the date of the first advance. Imperial does not, however, contest the finding that the $67,500 was interest, and defendants do not say that September 16 is wrong, so we leave the finding undisturbed. Our inquiry thus narrows to the question of the termination date of the life of the loan.

The parties did not consummate a one-shot transaction for the estimated costs of construction.[7] The promissory note says that the makers owe the payee $4,500,000, but the Loan Agreement, to which the note refers, says they really do not owe any principal and will owe only the total of the advances made from time to time. Imperial's loan was coordinated with the commitment of the permanent lender. Although defendants' promissory note purports to be payable on or before a fixed date, the Loan Agreement recognizes that construction may not be completed when expected, and, if the premanent loan commitment is extended, the interim loan will be extended also. Imperial was obligated to make advances for the life of the construction project, not for a single year. The entire transaction was integrated, coordinated and flexible, to meet a particular set of economic needs.

Under the Loan Agreement in its original form the parties contemplated the possibility that when the permanent

---

6. Presumably because of this holding of *Nevels*, the defendants do not claim that the acceleration clause contained in the deed of trust in this case made the transaction usurious.

7. In the type of arrangement these parties employed the borrower is not burdened by interest charges on idle funds. The lender is protected because he advances funds commensurate with the progress of the work and the resultant increase in value of the security.

There was a proposed schedule of dates and amounts of advances. But defendants were given the right to vary therefrom depending upon their needs and the stage of construction.

**1346**

loan was closed, a substantial part of the unpaid balance on the construction loan would be extended and renewed, and under the amendment they specifically agreed upon extension and renewal. When the $500,000 note was executed it remained secured by the original deed of trust, plus other security. The phraseology of Nevels v. Harris is "10 per cent. interest per annum from the time the borrower had the use of the money until he should repay it." In the circumstances of this case, we think that "until he should repay it" is the due date of the renewal and extension note.[8]

The rationale of the saving clause cases and the Texas preference for a nonusurious construction are relevant here, just as they were in our threshold consideration of whether to apply the life of the loan rule. Our conclusion that the loan lasted until the due date of the extension note gives effect to the parties' intention evident in the saving clause when their agreement is open to more than one interpretation on the question of the date the loan was to terminate.[9]

 In its amended findings and conclusions the District Court correctly held that maximum allowable interest must be calculated by subtracting the $67,500 front end fee from the $860,000 stated amount of the first advance in order to arrive at the real amount of principal received, $792,500. *See* Nevels v. Harris, *supra,* 102 S.W.2d at 1049; Adleson v. B. F. Dittmar Co., *supra,* 80 S.W.2d at 940; Temple Trust Co. v. Sto-

baugh, 59 S.W.2d 916, 918 (Tex.Civ. App.1933).[10]

The judgment of the District Court is vacated and the cause remanded for further proceedings not inconsistent with this opinion.

The costs are divided equally.

---

8. Terry v. Teachworth, *supra,* also concerned a construction loan, but the court did not consider the effect of the arrangements between the parties since the life of the loan was not in question.

9. The District Court found that a $5,000 interest payment was made on the extension note on September 5, 1969, after the due date of the note. Imperial has not argued that the loan life went beyond July 30, 1969. We treat the September 5 occurrence as merely a payment on an overdue note.

10. We reject Imperial's position that a stipulation of the parties barred the District Court from correcting its initial calculation, which was based on $860,000. It is just barely arguable that the stipulation covered this point, but if it did, the parties could not bind the District Court to a method of calculating interest that misapprehended the Texas law. Logan Lumber Co. v. Commissioner of Internal Revenue, 365 F.2d 846 (5th Cir. 1966); Boston Edison Co. v. Campanella & Cardi Const. Co., 272 F.2d 430 at 433 (1st Cir. 1959).