**ROBERT JOSEPH PHILLIPS LIVING TRUST et al., Appellants,**

v.

**Evelyn SCURRY, Appellee.**

**No. 11–97–00413–CV.**

Court of Appeals of Texas, Eastland.

March 18, 1999.

---

Stuart Evan Glass, Weiner, Glass & Reed PC, Attorneys at Law, Dallas, for appellant.

Robert K. Frisch, Johnson & Steinberg PC, Attorneys at Law, Lawrence S. Fischman, Attorney at Law, Dallas, for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCLOUD, Senior Justice*

OPINION

AUSTIN McCLOUD, Senior Justice (Retired).

Robert Joseph Phillips, in his individual capacity and as trustee of the Robert Joseph

---

* Austin McCloud, Retired Chief Justice, Court of Appeals, 11th District of Texas at Eastland sitting by assignment.

Phillips Living Trust (Phillips), appeals the trial court's granting of Evelyn Scurry's (Scurry) motion for summary judgment and the denial of Phillips' motion for summary judgment. The trial court held that a promissory note given to Phillips by Scurry was usurious and awarded Scurry the penalties under TEX.REV.CIV.STAT. arts. 5069–8.01 and 5069–8.03 (1987).[1] We reverse and remand.

A trial court may grant summary judgment only when the moving party shows that (1) no issue of material fact exists and (2) he is entitled to summary judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991). To support a summary judgment, testimony of an interested witness must be "clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." Rule 166a(c). The phrase "could have been readily controverted" does not mean that the testimony is easily or conveniently rebutted. Rather, it means that, if the credibility of the witness will be a dispositive factor in resolving the case, summary judgment is inappropriate. *Casso v. Brand*, 776 S.W.2d 551, 558 (Tex.1989).

Phillips is the trustee of the Robert Joseph Phillips Living Trust. In 1994, James Warner, the owner of Vantage Construction, Inc. (Vantage), approached Phillips about loaning money to Scurry in order to finance improvements by Vantage on Scurry's home. On May 9, 1994, Scurry entered into a contract with Vantage for improvements to her home costing $25,000.00. Scurry would pay for the work in three installments of $7,500.00 and one installment of $2,500.00, payable as the work progressed. On the same day, Scurry made a note payable to Phillips for $25,000.00 at 12 percent interest per year, payable in 120 monthly installments of $358.68. She also gave a deed of trust (the second deed of trust) on her home to Phillips to secure the note. On May 10, 1994, Scurry gave Vantage a mechanic's and materialman's lien on her home to secure payment for the home im-

provement work. Vantage assigned the lien to Phillips.

Vantage prepared the note and second deed of trust for Phillips and Scurry to sign. The parties executed the instruments at Scurry's place of employment. Both the note and second deed of trust contain a "savings clause." The note states:

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

The second deed of trust states:

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

Phillips gave four checks to Scurry. Each check was payable to Scurry and Vantage. Three of the checks were in the amount of

---

1. The usury statutes involved in this lawsuit have been repealed and are now codified at TEX. FIN. CODE ANN. § 301.001 et seq. (Vernon 1998).

$7,500.00; one was in the amount of $2,500.00. These checks were to be negotiated as each installment under the home improvement contract became due. Scurry eventually terminated the home improvement work when Vantage failed to perform satisfactorily. Two of the $7,500.00 checks were cashed before the work ended. Scurry made 13 payments on the note, 10 for $360.00, 2 for $358.18, and 1 for $452.00 (representing a regular payment plus $93.32 in late fees). She made no payment after July 1995. Scurry offered to return the two uncashed checks to Phillips, and Phillips told her that he would accept them if she would pay the cost of reforming the deed of trust and note to reflect the lesser principal amount. Phillips eventually submitted a reformed note and deed of trust to Scurry, but she never signed it and never returned the remaining checks.

The property granted in the second deed of trust was Scurry's home. The property was already encumbered by a prior deed of trust (the first deed of trust) that secured a purchase money note. At the time that the parties executed the note and second deed of trust, the first deed of trust was properly filed in the deed records of Dallas County, where the property is located. The note given by Scurry to Phillips was a secondary mortgage under TEX.REV.CIV.STAT. art. 5069–5.01(1)(a) (1987) because it was secured by a lien on real property improved by a single-family dwelling that was subject to a prior deed of trust. Phillips was not a licensed lender at the time the second note and deed of trust were executed; thus, he could not contract for, charge, and receive more than ten percent interest per year on the note. TEX.REV.CIV.STAT. art. 5069–5.01(2) (1987).

Scurry filed suit against Vantage, Warner, and Phillips.[2] In her suit against Phillips, Scurry alleged that the note was usurious. Phillips filed a counterclaim requesting a declaratory judgment reforming the note to reflect a lawful rate of interest from its inception. Scurry filed a motion for summary judgment; Phillips filed a cross motion for

summary judgment. The trial court granted Scurry's motion and denied Phillips' motion. Phillips argues in his first, second, and third points that the trial court erred by granting summary judgment for Scurry and by denying his cross motion for summary judgment because the note is not usurious on its face, because it contains a savings clause, and because it is not a device or subterfuge to avoid the usury laws. These points are dispositive of the case, and we need not consider the remaining points. TEX.R.APP.P. 47.1.

 All parts of a contract must be given effect, if possible. The law presumes that parties will contract so as to obey the law. *Nevels v. Harris*, 129 Tex. 190, 102 S.W.2d 1046, 1049–50 (1937). Savings clauses that remove the taint of usury are favored by the law and will be given effect if reasonably possible. *Woodcrest Associates., Ltd. v. Commonwealth Mortgage Corporation*, 775 S.W.2d 434, 437–38 (Tex.App.—Dallas 1989, writ den'd). The effect of savings clauses hinges on construction of the terms of the whole transaction in light of the surrounding circumstances. *Woodcrest Associates, Ltd. v. Commonwealth Mortgage Corporation*, supra at 438. Usury is a matter of intention, and a savings clause is evidence of an intent not to charge usurious interest. *Edmondson v. First State Bank of Mathis*, 819 S.W.2d 605 (Tex.App.—Corpus Christi 1991, no writ). A party, however, may not "exact from a borrower a contract that is usurious under its terms" and escape penalty by disclaiming the intention to do what was clearly done. *Nevels v. Harris*, supra at 1050; *Terry v. Teachworth*, 431 S.W.2d 918, 926 (Tex. Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.).

 Scurry points out that Phillips was not a licensed lender under TEX.REV.CIV. STAT. art. 5069–3.01 et seq. (1987) and that the first deed of trust was properly filed in the proper county giving Phillips constructive notice of its existence under TEX. PROP. CODE ANN. § 13.002 (Vernon 1984). Thus, Scurry contends that the note is usurious on its face because Phillips knew that he was an

**2.** Warner and Vantage were apparently dismissed from the suit prior to judgment. Neither

party is subject to this appeal.

unlicenced lender making a secondary mortgage for a rate greater than ten percent per year. Phillips argues that he had no actual knowledge of the first deed of trust and that he was unaware that he could only charge ten percent if the note was a secondary mortgage. Neither the note nor the second deed of trust referenced any prior liens on the property. Neither instrument is subordinated on its face to a prior lien of record. In fact, the deed of trust contains a provision calling for Scurry to discharge any prior liens or to make other arrangements to subordinate prior liens to the second deed of trust. The note, on its face and by its terms, is not usurious. Nothing in the note suggests that it is a secondary mortgage or that Phillips is an unlicenced lender. Those facts may only be ascertained from extrinsic evidence.

■ Phillips' constructive notice of the first deed of trust does not conclusively establish an intent to charge usurious interest. Constructive notice under Section 13.002 is designed to preserve the order of priority among holders of liens on real property. Constructive notice serves to protect the rights of a prior lienholder against the actions of subsequent lienholders. Giving effect to a savings clause, however, serves to protect good faith lenders from the stiff penalties imposed by the usury statute. There is summary judgment evidence that Phillips acted in good faith and relied on his actual knowledge when he made the bargain with Scurry.

Clearly, Phillips intended to charge Scurry 12 percent interest per year on the principal. The savings clause, however, indicates that Phillips intended to reduce that charge to the lawful rate in case the loan turned out to be usurious. Phillips testified in his deposition that he is not a professional lender. He testified that he made loans to people as investments and hoped to earn a return on those investments. Nothing in the record indicates that the savings clause was an attempt to circumvent the usury laws. The record fails to establish that Phillips had actual knowledge of facts that would trigger the statutory limits on interest. Although Scurry filed a copy of a title summary report prepared for Vantage that listed the first

deed of trust, the record only shows that Phillips produced the document in discovery. Nothing in the record shows whether Phillips saw the document prior to making the loan.

■ If Phillips had no actual knowledge of the first deed of trust, a material question of fact exists as to whether the parties intended to enter a lawful contract without violating the usury laws. Under these facts, giving effect to the savings clause in this case would not offend the purpose of the statute:

> It is the intent of the Legislature ... *to protect the citizens of Texas from abusive and deceptive practices now being perpetrated by unscrupulous operators,* lenders and vendors in both cash and credit consumer transactions. (Emphasis added)

Declaration of Legislative Intent preceding TEX.REV.CIV.STAT. art. 5069 et seq. (1967). Giving effect to the savings clause would remove the usurious taint from the contract by reforming it to reflect the appropriate principal amount and interest charges.

Scurry cites numerous cases which hold that a lender may not circumvent the usury statutes simply by raising a savings clause or crediting back improperly charged interest. See *Danziger v. San Jacinto Savings Association,* 732 S.W.2d 300 (Tex.1987); *First State Bank of Bedford v. Miller,* 563 S.W.2d 572 (Tex.1978); *Southwestern Investment Company v. Hockley County Seed & Delinting, Inc.,* 516 S.W.2d 136 (Tex.1974); *Terry v. Teachworth, supra.* All of these cases involved situations in which the lender withheld part of the principal from the borrower but charged interest on the entire amount of principal stated in the note. While *Danziger, Miller,* and *Southwestern Investment Company* all involved notes without savings clauses, the deed of trust in *Southwestern Investment Company* contained a savings clause. *Terry* involved a note with a savings clause; however, acts by the lender displayed a clear disregard for the usury laws. These cases are distinguishable from the present case.

Scurry also cites *Smart v. Tower Land and Investment Company,* 597 S.W.2d 333 (Tex.1980), which involved a note that allowed the lender to retain unearned interest

in the event of acceleration. The borrower had to pay three years interest in advance. The note in *Smart* also had no savings clause. The supreme court commented on this fact when it held the note usurious on its face, stating:

> In the absence of a savings clause, we find that [the lender's] expressed authorization to retain excess unearned interest overcomes the presumption of legality accorded to allegedly usurious contracts.

*Smart v. Tower Land and Investment Company, supra* at 341. This language indicates that the court might have given effect to a savings clause. *Smart* is distinguishable as well.

Scurry also points out that she only actually used $15,000.00 of the $25,000.00 principal amount. Scurry, however, held the remaining $10,000.00 in two fully negotiable checks. Nothing in the record indicates that Phillips prevented her from cashing the checks or that she attempted to cash the checks and failed. As noted above, the cases on which Scurry relies involved lenders withholding part of the principal from a borrower but charging interest on the full amount. That did not occur here.

We hold that Scurry failed to prove as a matter of law that the note is usurious on its face and that the savings clause should have no effect. If Phillips had no actual knowledge of the first deed of trust, the savings clause can be given effect without violating the usury laws. The record regarding Phillips' knowledge of the first deed of trust fails to prove actual knowledge as a matter of law and creates a genuine issue of material fact under Rule 166a(c). Phillips' credibility as to his actual knowledge of the first deed of trust creates a fact question which also precludes a summary judgment in his favor.

We reverse the judgment of the trial court, and we remand this cause for further proceedings.