Opinion filed March 5, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed March 5,
2009

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-07-00278-CV 

                                                    __________

 

      MARY LOUISE KENNON AND KENNON LIVING TRUST, Appellants

 

                                                             V.

 

                                     WANDA
J. McGRAW, Appellee

 



 

                                        On
Appeal from the 142nd District Court

 

                                                        Midland
County, Texas

 

                                                Trial
Court Cause No. CV 43,072

 



 

                                                                   O
P I N I O N

 

Wanda
J. McGraw sued Mary Louise Kennon and Kennon Living Trust alleging that they
wrongfully foreclosed her residence and that they charged her usurious
interest.  The trial court conducted a bench trial and found in McGraw=s favor.  We affirm in part
and reverse and remand in part.

                                                             I. 
Background Facts  








In
1995, McGraw and her husband purchased a residence from the Trust.  They signed
a promissory note payable to the Trust for $32,000 and a deed of trust.  The
note bore interest of 9% and was payable in 180 monthly installments due on the
first day of the month beginning April 1, 1995.  In 1995, the McGraws made all
of their payments, but only one timely.  The McGraws were divorced in 1996. 
From that point forward, Wanda McGraw=s
payments were always late and many were missed B
although she did make an additional $1,015.76 payment in 1998.

Kennon=s attorney sent a letter in
February 1999 demanding payment of $1,322.47 to satisfy an escrow shortage and
$1,622.80 for past-due note payments.  McGraw consulted with an attorney.
McGraw=s attorney
responded to the demand letter, denied that there was any default, and contended
that the Trust was improperly calculating McGraw=s
escrow payment.  In November 1999, the Trust sent a second demand letter.  This
letter demanded payment of $5,632.11 for past-due principal, interest, taxes,
and insurance.  McGraw=s
attorney again denied any default and contended that McGraw was being charged
usurious interest.

The
Trust foreclosed the note and, on March 10, 2000, provided McGraw with notice
of a trustee=s sale to
take place on April 4.  McGraw=s
attorney faxed a response on April 3.  McGraw alleged that the Trust was
charging usurious interest because it was improperly calculating the interest
due on past-due payments.  The Trust proceeded with the trustee=s sale and, in June, 
attempted to evict McGraw.  She filed suit in district court, and the eviction
proceedings were abated.  Following a bench trial, the trial court found that
McGraw had been charged interest of $3,240.50 in excess of the amount allowed
by law and awarded McGraw damages of $9,721.50, attorney=s fees, and costs.

                                                                       II. 
Issues   

Kennon
and the Trust contend that the trial court erroneously failed to spread the
interest over the entire term of the note, that the trial court erred by not
giving effect to the note=s
savings clause, and that the evidence is legally and factually insufficient.

                                                                     III.
Analysis

 A. 
Standard of Review.








A
trial court=s findings
of fact in a bench trial are reviewed for legal and factual sufficiency under
the same standards used to review a jury=s
verdict on jury questions.  Girdner v. Rose, 213 S.W.3d 438, 445 (Tex.
App.CEastland 2006, no
pet.).  In considering a legal sufficiency challenge, we review all the
evidence in the light most favorable to the prevailing party and indulge every
inference in their favor.  City of Keller v. Wilson, 168 S.W.3d 802, 822
(Tex. 2005).  In reviewing a factual sufficiency challenge, we consider all of
the evidence and uphold the finding unless the evidence is too weak to support
it or the finding is so against the overwhelming weight of the evidence as to
be manifestly unjust.  Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex.
1986).  We review the trial court=s
conclusions of law de novo.  Smith v. Smith, 22 S.W.3d 140, 143-44 (Tex.
App.CHouston [14th
Dist.] 2000, no pet.).

B. 
Spreading.  

The
trial court found that from March 1995 through December 1999 Kennon and the
Trust charged McGraw interest of $17,845.29 and that this was usurious because
the maximum amount of allowable interest was only $13,920.  The December date
may have been a typographical error because it appears that the court intended
to use the time period running through the Trust=s
acceleration of the note, but the note was accelerated by letter dated March
10, 2000.  Regardless, Kennon and the Trust argue that, because of the Spreading
Doctrine, it was error to use any period of time shorter than the fifteen-year
term of the note and that the trial court should have determined whether
$17,845.29 could be legally charged over fifteen years.  McGraw answers that
the Spreading Doctrine only applies when analyzing a note to determine if it
charges usurious interest and that it does not apply here because Kennon did
not follow the note=s
terms when she charged past-due interest.

The
Spreading Doctrine was first recognized in Nevels v. Harris, 102 S.W.2d
1046, 1049 (Tex. 1937).  It has since been codified at Tex. Fin. Code Ann. '
302.101 (Vernon 2006).  This statute reads in part:

(a)
To determine whether a loan secured in any part by an interest in real
property, including a lien, mortgage, or security interest, is usurious, the
interest rate is computed by amortizing or spreading, using the actuarial
method during the stated term of the loan, all interest at any time contracted
for, charged, or received in connection with the loan.  

 

Because of the
statute=s mandatory
language and its broad reference to all interest contracted for, charged, or
received, we disagree with McGraw that it only applies to the construction of a
written agreement.  The doctrine is applicable to this case as well.








            The
next question is what time period should be utilized.  The trial court did not
use the entire fifteen-year term because the note was accelerated; however, the
supreme court has held that this is immaterial.  In Tanner Dev. Co. v.
Ferguson, 561 S.W.2d 777, 779 (Tex. 1977), the court considered a five-year
note that required prepayment of interest at the beginning of the note and then
provided for a subsequent period of principal-only payments.  The debtor
defaulted while still making prepaid interest payments, and the creditor
accelerated the note.  The court held that, even though the note was
accelerated, usury should be determined by using the five-year term.  Id. at
786. 

Because
the trial court did not utilize the entire term of the note when it performed
its interest calculation, Kennon and the Trust=s
first and second issues are sustained.  But for the reasons explained below, we
do not endorse their proposed method for determining the interest rate charged.


C.
 Savings Clause.  

Kennon
and the Trust next argue that the trial court erred as a matter of law by not
giving effect to the note=s
savings clause.  They contend that, unless a note is usurious on its face, a
savings clause precludes a usury claim.  The note provided:

It
is further expressly agreed that interest on this note will not be charged in
excess of the highest legal rate specified by the Laws of the State of Texas
and that future adjustments will be made to avoid the payment of interest in
excess of such limits.

 

The trial court
found that, because the Trust accelerated the note and held a trustee=s sale, McGraw=s future payments could not
be adjusted to compensate for overcharges and, thus, that the savings clause
did not preclude a usury claim.  The court also found that Kennon and the Trust=s actions were not the
result of any accident or bona fide error.

Savings
clauses are favored by the law and will be given effect if reasonably
possible.  Woodcrest Assocs., Ltd. v. Commonwealth Mortgage Corp., 775
S.W.2d 434, 437-38 (Tex. App.CDallas
1989, writ den=d). 
The effect of a savings clause hinges on the construction of the terms of the
whole transaction in light of the surrounding circumstances.  Id.  Usury
is a matter of intention, and a savings clause is evidence of an intent not to
charge usurious interest.  Robert Joseph Phillips Living Trust v. Scurry,
988 S.W.2d 418, 421 (Tex. App.CEastland
1999, pet. denied).  A party may not, however, escape penalty by disclaiming
the intention to do what was clearly done.  Nevels, 102 S.W.2d at 1050.








Kennon
and the Trust=s issue
raises a legal sufficiency challenge.  This requires that we review all the
evidence in the light most favorable to the prevailing party, indulging every
inference in their favor.  City of Keller, 168 S.W.3d at 822.  Kennon=s daily late interest
charge was the amount of interest accruing each day on the total note.  Kennon
testified that she calculated late interest charges using an amortization
schedule the title company provided at closing.  That schedule included an
equivalent daily interest rate.  She multiplied this rate by the number of days
a payment was late.  This initially resulted in a $7.872 daily late payment
charge.  As the note balance decreased, she recalculated the daily interest
rate.  Kennon was, therefore, doubling the interest McGraw was charged each day
her payment was late.  One court has described this method as Apatently erroneous.@  See Pentico v.
Mad-Wayler, Inc., 964 S.W.2d 708, 715 (Tex. App.CCorpus Christi 1998, pet. denied).

When
the Trust accelerated the note, McGraw=s
counsel specifically brought this issue to Kennon=s
attention, writing:

After
reviewing Ms. Kennon=s
figures and the terms of the Deed of Trust and Vendor=s Lien Note, it is clear Ms. Kennon is
incorrectly computing the interest on past due payments.  The clear language of
the note entitles her only to claim interest on the past due principal
and interest.  Ms. Kennon is computing her past due interest on the entire
unpaid balance.

 

Previously,
McGraw=s counsel had
twice advised Kennon in writing that Kennon was incorrectly calculating McGraw=s payment obligations and
once warned her that she was charging usurious interest.  Kennon did not alter
her demand, proceeded with the trustee=s
sale, and testified at trial that she made no adjustments because she did not
believe it was necessary.

When
this evidence is viewed in the light most favorable to McGraw, it supports the
trial court=s lack of
accident or bona fide error finding.  Consequently, the trial court did not err
as a matter of law by finding that the savings clause did not preclude McGraw=s usury claim.  Issue Three
is overruled.

D. 
Sufficiency of the Evidence.








Kennon
and the Trust next argue that the evidence is legally and factually
insufficient to support the trial court=s
finding that they charged usurious interest.  The trial court had the note and
heard evidence of McGraw=s
payments, Kennon=s
past-due interest calculations, and the Trust=s
demands.  This is some evidence and, thus, legally sufficient to support the
trial court=s
finding.  However, it is factually insufficient because neither party offered
evidence of the appropriate late charges or past-due interest.

Because
McGraw=s payments were
late, the Trust was entitled to late charges and to interest on unpaid
charges.  Pentico, 964 S.W.2d at 717-18.  Tex. Fin. Code Ann. '
302.001(d) (Vernon 2006) allows the trust to charge the greater of five percent
of the payment or $7.50 for any payment that is at least ten days late.  McGraw=s monthly payments were
$324.56.  The Trust, therefore, was entitled to a late charge of $16.23 for
each payment received on or after the eleventh of the month due.  The note also
provides that Aall
past due principal and interest due under the terms of this note shall bear
interest from maturity at the maximum allowable rate.@  Tex.
Fin. Code Ann. ' 302.001(b)
(Vernon 2006) sets the maximum rate of interest at 10% a year.  The Trust
could, therefore, charge 10% interest or 8.8921 cents per day on all late
payments.

McGraw
called Lawrence Prucka, a CPA, as her expert witness.  Prucka agreed that the
Trust was entitled to additional interest on past-due payments, but he did not
make that calculation.  Instead, he took the date of each payment and
calculated the accrued interest as of that date.  He deducted the accrued
interest and applied the remainder to principal.  Prucka accused Kennon of
charging several hundred percent interest on late payments, but his
calculations fail to consider either the legally allowable late charges or the
interest accruing on past-due payments and, thus, understate McGraw=s liability.   Because
McGraw provided some evidence of overcharging, Kennon and the Trust=s legal sufficiency
challenge (Issue Four) is overruled.  But because McGraw did not provide the
court with sufficient evidence to make the correct calculation, Kennon and the
Trust=s factual
sufficiency challenge (Issue Five) is sustained.  This requires that we remand
for a partial new trial to determine if the Trust charged usurious interest
and, if so, to award the appropriate relief.  Because we are affirming the
trial court=s finding
that the savings clause does not preclude a finding of usury, that issue is not
included in the new trial.








When
conducting the new trial, the court should spread the interest over the entire
fifteen-year period of the note.  The court should consider not only the
interest actually charged but also the interest that would have been charged
absent acceleration.  See Tanner, 561 S.W.2d at 779 (considering
the interest charged as of acceleration and the interest that would have been
charged over the remainder of the note); Groseclose v. Rum, 860 S.W.2d
554, 558 (Tex. App.CDallas
1993, no pet.) (the Spreading Doctrine requires consideration of all interest
charged to date along with interest to be charged pursuant to the terms of the
note).[1]  When
calculating the maximum permissible interest, the court should consider the
late charge allowed by Section 302.001(d) and the 10% interest on late payments
allowed by Section 302.001(b).  Finally, the Trust is entitled to 10% on
past-due escrow payments.  Unlike many mortgages that require the payment of
estimated taxes and insurance in advance, the note required McGraw to reimburse
the Trust.[2]  Thus, McGraw=s monthly escrow payments
are one-twelfth of the previous year=s
insurance and tax costs.

                                                         IV.
Holding

The
judgment of the trial court is affirmed in part and reversed in part.  That
portion of the judgment finding that the savings clause does not preclude a
usury claim is affirmed.  The remainder of the judgment is reversed, and this
case is remanded for a new trial on all issues excluding the savings clause.

 

 

RICK STRANGE

JUSTICE

 

March 5, 2009

Panel consists of:  Wright, C.J.,

McCall, J., and, Strange, J.









     [1]We do not hold that
trial courts have no authority to depart from the express terms of the note
when considering future interest.  If, for example, the court found that the
parties had altered their obligations through a course of conduct, the court
would calculate interest using the revised agreement.  Here, there are no
findings supporting a departure from the note=s
express provisions. 





     [2]The note reads:

 

It is the
responsibility of the Kennon Living Trust to prepay the premiums for insurance
and to prepay the taxes annually and to advise the makers hereof of these amounts. 
The total monthly payments due on this note shall be adjusted as necessary to
include enough money to reimburse Kennon Living Trust for these funds on an
annual basis.  Maker=s failure to pay these escrowed funds for taxes and
insurance shall constitute a default under the Deed of Trust securing this note
and shall entitle beneficiary to any rights and/or remedies granted herein to
satisfy default.